I'd like to reserve five minutes for rebuttal. May it please the Court? The issues in this appeal fall into three categories which I believe need to be answered in an order. I assume you're Mr. Pollard. I've noticed that your lawyers here don't seem to tell us who they are. We've got your name on the sheet. I just want to make sure we've got the right name. You are Mr. Pollard. Well, Mr. Pollard, thank you, Your Honor, because it's not always common that people pronounce it correctly. I appreciate that. You didn't want a French pronunciation, then? No, and I will tell you it has been mispronounced a variety of very creative ways. The issues are essentially threshold issues in order. We need not reach the further issues until we resolve the original, the first issue, which in this case is whether or not what the State of Idaho did in the new version of Statute 50-222 is a voting scheme. Counsel, let me focus on what may narrow the issues a little bit. I don't understand why we should breach a Type C annexation. The reason I don't understand it is the annexations in this case are a Type A and a Type B. So it seems to me that even though the plaintiff would like to have the whole annexation scheme examined, there just isn't anyone with a Type C annexation problem in court, and we should stay out of that ourselves for that reason. What am I missing? Part of the issue, Your Honor, is that we are challenging it on its face that no annexation in Carr is a plaintiff, or a plaintiff as Carr as a plaintiff. I'm sorry? Can we do that? I mean, in a free speech case, you can make a facial challenge, but this isn't a free speech case. Can you make a facial challenge even though your plaintiffs are not personally affected by a Type C annexation? I believe so, Your Honor, because one of our plaintiffs is an associational plaintiff. It has been determined by the court below to have a standing, and its members face Well, we've got to make our own independent determination. It looks as though it's an association that has entered this case to deal with a Type A and a Type B annexation in this case. Even if they have broader concerns, why would that open the door to us to consider an annexation that isn't here? It strikes me as a little bit like when the Sierra Club challenges an environmental case, and the Supreme Court says, well, you haven't found any plaintiff who has ever been there or plans to go there. So even though you're a national association, there's no standing. Well, there are several reasons. The other reason is that this is, in fact, an integrated scheme, and which category of annexation is used is often based on determining whether or not the cities involved wish to avoid having to go to a Category C annexation. That is one of the ways in which the statute as a whole can be abused, and in our motion for reconsideration before the court below, we submitted additional documentation of events that occurred after the complaint. I don't see where it comes up, because it's all size. It's not like the city says, well, we'd rather not have people voting on this, so we're just going to not do it the C way, where you have to get consents, and just they're kind of like voting. It's not that way. A is for a little enclave, and B is for a small annexation, and that's what we've got. A is a trailer park and connected to the utilities, and B is 12 parcels under 5 acres. Because the consent issue arises in all three categories. Now, that is a persuasive answer, if it's the correct answer, but maybe you need to educate me. I may be in error, but I thought consent did not arise under the three categories. Well, they don't. But what they do in categories A and B is to refer to situations in which no objections, quote, unquote, have been made. I thought in A and B they don't need any consents. They can annex despite the opposition of everybody else. Not quite, Your Honor. Category A, first of all, part of it says there is no objection to annexation. That is essentially to say that people have consented either by their silence or by actively objecting. Well, it has an or there. Or. But the reality is section – If there are objections, they can annex the way it is after the word or. Enclave. The problem, Your Honor, is implied consent. Yeah, but where do you – where do you need it? Because you're held not to be able to object if you impliedly consented. Let's assume they all object. Let's assume everybody in a trailer park – I think there's just one owner of the trailer park, and she objects because she's going to get stuck for a lot more money on water and sewer. She objects. So, obviously, she can't go under the – they can't annex her under raise no objection. So why can't they just go under the words following or, annexation of residential enclave lands of less than 100 parcels surrounded on all sides by the city and by lands for which owner – well, that one you don't – and for lands by which owner approval must be given or which are bounded by lands within a city? Why isn't this an enclave case where it can be done over the 100 percent objection? I believe it was – well, first of all, she can't object because she is already connected to sewer and water with the city, and they are not allowed under the statute to object. They are deemed to have impliedly consented to being annexed by receiving sewer and water services. In fact, the reason that they went ahead and annexed in that case was because they had struck a deal with the city early on in order to be connected to the sewer, where the city decided that that was disadvantageous. So if you've got implied consent because you have either purchased property that's already hooked up to a sewer system or you have accepted a hookup while you're the owner of property, how could that possibly be construed as a voting scheme? There are two problems with that. First of all, when the sewer was hooked up, there was no implied consent statute. You could not – they would not have been any kind of notice that by consenting to being hooked up to the sewer. It's zoning, like a zoning regulation or a restriction that's placed on the use of real property. Let me see by analogy, Your Honor, if I can answer your question. There have been cases out there where Fourth Amendment protections of students in schools have been struck down because, you know, they violated the Fourth Amendment. The defense of the government was, well, by going to school, they impliedly consented to be searched. And the courts essentially have said quite logically when you're compelled to do something, you cannot be held to have impliedly consented by doing something that by law you must do. And in the state of Idaho, you can easily be compelled to have consented to being annexed or to having the sewer or the water services. The Department of Health and Human Services can basically say we're not going to allow you to use your wells anymore. You must be connected to the sewer. That cannot be held to be implied consent when someone says you have to do it. Secondly, when the hookup occurred prior to the time the statute went into effect, the plaintiff is in no position to have said I'm consenting to be annexed into the city because I did not know at the time, it was not the law at the time, that that would be implied consent. It would be a far different thing if the law already existed and then I agreed to be hooked up to the sewer. In a case where it was purely voluntary. But here, that was one of the central issues in our case as to whether you can impliedly consent to something that you can be forced by law or have been forced by law or which you did prior to the statute coming into effect. Okay. But if there was – if there is a problem here, why doesn't it arise in some of the context? I don't know whether it's a takings clause or something else. Going back to your analogy of the students in the Fourth Amendment, by deeming them to have impliedly consented by going to school, we didn't suggest it was a voting scheme. Which is why – well, first of all, the determination whether there is a voting scheme involved at all is essential for all three categories of annexation. Because once again, where they have basically said you can be annexed because there's no one objecting because we won't hear your objection because you impliedly consented. I understand the objections. And I see how the property owners would be very, very unhappy with having that consent deemed as a matter of law. It seems to me that there might be some other objections they could raise. What I'm struggling to find out is why that makes this a voting scheme. Just because there's implied consent, why that makes it a voting scheme. Well, that is, in fact, Your Honor, the heart of the case, which is what Judge Widnall also recognized below. The State of Idaho – well, let me back up a moment, Your Honor. I am aware of only three circumstances in a representative democracy in which a person can be bound by the consent of a third party. The first is when the third party doing the consenting is a publicly elected official who has either himself adopted a statute or delegated the authority to make regulations to another governmental official who has come into the government as a government servant on the – within the eyes of the law and the Constitution. The second situation is whether you have a consent by a third party, such as a parent or a guardian, when you have either a minor or you have a person who has been adjudged incompetent by a court or other lawful means, and the third party can consent for them. And the third circumstances in which third parties can consent for you is when there is, in fact, a direct vote of the people. The State of Idaho's own Constitution recognizes that you cannot limit a voting scheme to landowners alone. So if you create a scheme in which you have some third parties who can consent for other third parties, simply on the basis of a nongovernmental official saying, I consent to my property being annexed and, therefore, I can bring in vast numbers of other people or other lands into here, under this statute the city is bound if the consent vote goes against annexation. So there is at least one circumstance under the statute where the consent binds or lack of consent binds the city officially. Counsel? I'm interested in the same line of questioning that Judge Bivey has been pursuing with you, and I'd like to focus you a little on some language in our decision in Hussey. Hussey said that an annexation did violate the right to vote. Correct. Your Honor. It draws a distinction. It says, Portland may pursue annexation either by calling for an election, which in nobody's disputes would involve voting, or by the con- this is page 1265, or by the consent of a double majority of landowners and registered voters. The conclusion is inescapable that the common thread between these procedures is that they both require the consent of the governed. That's what voting is. So there we say it's voting. You have to follow the Equal Protection Clause cases on voting. But we say on the page before that, 1264, that we have no quarrel with the results of Berry and Carlin, although we do not agree with the reason. The reason that we have no quarrel with the results, in other words, why those cases are distinguishable, is neither of the annexation methods at issue in those cases granted electors any say in the proceedings. The consent of landowners alone was required. Without the participation of voters, there can be no voting. Now, if I understand this case right, and I may not, the lawyers always know more than the judges, the people that live in the trailer park, they're electors, they're voters, but they don't have any say one way or the other in terms of consenting to annexation. The only question that you raise is about the implied consent of the lady that owns the trailer park as a landowner who's hooked up to the water and sewer. Have I got this analysis right? Is it true that the people in the trailer park don't get to vote in subsection A annexations? And if so, why wouldn't it be the case that there's no voting here because there's no participation of voters and she loses under Hussey? Well, Your Honor, there's a couple reasons, and I do respectfully disagree with that analysis. Okay. My view of Hussey, Your Honor, is that Hussey found at least one set of circumstances in which a consent scheme can also be a voting scheme. It did not say, as I read the decision, this is the only set of circumstances. I mean, like a good court, it said under these circumstances, this is the case. They just decided the case in front of them. That is right, Your Honor. And I must say also that the owner of the trailer park happens to be a voter under the law in Idaho. So everyone over the age of 18. Do the other people in the trailer park have to consent or object to annexation? Is their consent relevant to an A annexation? That's our objection, Your Honor. They should have been because the law of Idaho – I submit, Your Honor, that we have come at this question backwards. I thought your problem was they're annexing the trailer park without the consent of the lady that owns the trailer park, not that your objection was that they're annexing the trailer park without a vote of the people. Actually, we had two objections in this case, Your Honor. Three objections, essentially, as far as voting is concerned. First of all, that it is, in fact, a vote. And that the way we know it is a vote is that, in fact, it involves the three elements that Hussey talked about. First of all, that it is the expression of will. Secondly, that it resolves – Is there some expression of will by the people that live in the trailer park? No, they're being denied their opportunity. That's one of our objections. Then how is there a vote under Hussey? Because the landowner has voted, except in this case her vote was hijacked by an assumption that because they were attached to the sewer, they had impliedly consented to it. Otherwise, that provision – I'm getting confused instead of helped by metaphors. Your Honor, that is not a – Consent or vote. Who really – Your Honor, let me put it this way. If we have 50 landowners, we'll forget for a moment the tenants, which were also landowners under traditional property law. They just have a time-limited ownership. Nevertheless, they're being excluded. If you look at Hussey, Hussey talks about a vote being, A, an official expression of the will of the person voting, which is why we say we're coming at it backwards. The issue ought to be, Is it a vote? And then if there's a vote, obviously there are voters involved because they're voting. The second one is it's necessary to resolve a political issue. And the third one is that it in some way or other binds the discretion of governmental officials. All three of those elements are met, even when it's only the landowners. I mean, Idaho has a provision in its state constitution that says you cannot limit a vote to landowners. So it's a circular reasoning used by the cities and by the state. If you say, Ha, if we only limit it to landowners, it's not a vote because it's only landowners, then how can you ever violate Article I, Section 20 of the Idaho Constitution? Yes, I got your point as well, so I can understand it on that. Before you run out of time, let me ask you something about Rexburg. As I understood that, it was a Category D annexation. And for Category D, the city doesn't need a vote and it doesn't need consent. They just have to give notice and a hearing and follow the regulations on how to do a Subsection B annexation. Is that true? All the – every human who lives on these 12 parcels could show up at the hearing and say, I bitterly oppose the annexation, and they could still do it if they followed the regs? Yes, and we have a problem with that once again. Again, it is – the Category B, again, says it has to be one of the categories, and I believe that's applicable in this case. I'm going to have to go back and check again to make sure I'm correct. Rexburg B? Is that where more than 50 percent have evidenced consent at the outset of the process. Hold on. Is Rexburg a B? I believe that's correct. But, again, that is a situation where you can proceed under B because more than 50 – I believe the reasoning of the legislature here was if we already have consent of more than 50 percent of the landowners in here, then there's no point in going through a Category C process because the vote has essentially already been taken. But, again, when you have implied consent because they're receiving water from a service provided by the city or they have sewer attached to their – their implied consent is, again, not lawful. I'm missing some words in the statute. Point me to the words you're talking about. It looks – I see the C – the words you're talking about in C, and I don't see them in B. I don't know if there's something I didn't say. I did not put it in the statute. It is in the statute. It's cited in our brief when we describe Category B annexations. Save a little time for rebuttal and show me the words then. Thank you, Counsel. May it please the Court, Counsel. Thank you, Your Honor. My name is Jim Davis. I represent the City of Rexburg Appellees in this case. I will be limiting my comments to the vote or landowner consent issue. I need 10 minutes. Split it 10 and 10, please. Mr. Moore, who represents the City of Chalice Appellees in this case, will address the hypothetical question issue and the equal protection issue. Since there is no dispute that the City of Rexburg and the City of Chalice followed the annexation statute, I'm going to jump over the facts and immediately get to the question that I'm going to be addressing with the Court, and that is the landowner consent issue. That issue was framed by two lines of cases. On the one hand, we have a line of cases that says there is no right to vote in an annexation case. Hunter and its progeny established that a state legislature has discretion to determine the method of annexation that can be employed within a state. That's the first line of cases. The second line of cases says that if the legislature chooses an election process involving voters, any distinctions drawn by the legislature are subject to the Equal Protection Clause. The question here, then, is whether the landowner consent provision of 50-222 is a vote or not. Judge Windmill correctly held that it was not. The analysis of that issue has two parts. It has a state law part and a federal law part. The state law part is this Court needs to look at the state statute to determine whether landowner consent is voting or not. That decision here is governed by two factors. 50-222 was not enacted in a vacuum. When the legislature was considering the annexation method that it was going to utilize, it had the benefit of the Idaho Supreme Court's case in Willows v. City of Lewiston. In that case, the City of Lewiston charter had a provision very similar to that here. Landowners in an area to be annexed could consent or object. The Idaho Supreme Court held that was not an election process. With respect to Mr. Pollitt's continued representation to this Court that there is a constitutional provision in Idaho that prohibits landowner voting issues or landowner voting statutes, the Idaho Supreme Court said this objection or consent process is not an election. So we don't have to go there. There's a second reason that the Idaho statute does not involve elections. It's the plain, ordinary language of the statute. There's no mention of voters, voting, elections, or electorate. One of the interesting parts of it is when they talk about landowners — If it said consent of every person qualified to vote, then I think we could, under Federal law, treat it as a voting procedure, even though Idaho law would not, couldn't we? I agree with you, Your Honor. And that was going to be my second point when I dealt with what I consider to be the Federal law issue. You're absolutely correct. What if the statute said annexation is permitted if all those having property within the area that desires to be annexed vote at a special election to be annexed by the city of Rexburg or Chalice? I think that's the very same issue. I think if it said that there was going to be a vote and they defined voter, for instance, as those people who are 21 or 18 in Idaho are registered, we would have the Federal law issue and the protection clause issue. And if the statute provided that the voting procedure could be done in an open process taking place over two weeks in which all voters should submit a letter, that would still be a vote. And if the statute said, but if the statute said, you can see where I'm going. I do. If the statute said indicate your consent by means of a letter during the following two-week period, what's the difference? I understand the point, Your Honor. And to me, the difference is this. This is not a situation of Kramer where the issue is the legislature in Idaho decided that there was going to be a vote and we're now going to determine eligibility. That isn't what happened here. What we have is the other situation. We have the Hunter situation where they determined there isn't going to be a vote. We never get there. And so you never have to determine the eligibility issue. This is not a vote. In your hypothetical where they call it a vote as opposed to a consent or an objection, I can say we don't have that as opposed to question, obviously. Does it fall more towards the Hussey situation where the statute in Oregon said you need the consent of the landowners and the voters? My best answer is, Your Honor, I don't we don't have that situation here. When you look at B, there is one subsection, section 2, more than 100 parcels and more than 50% have evidenced their consent. If I understand this right, this isn't that case, so we can ignore that subsection. Is that correct? Yes, sir. Is subsection 1 less than 100 private ownerships and not all landowners have consented? Yes, sir. Do they need any consent from any group of people? If they need consent from some group of people, then I'm thinking the same as Judge Bybee, they can call it consent and it may still look like voting not. But I'm wondering, do they need any consent at all in a B sub 1 annexation? No, sir. If I may go back to the state law issue, there is another reason that the Idaho legislature has demonstrated that it did not intend to create the right to vote here. If you look at the qualifications of the people who are consenting and objecting, it's merely landowners. There's no requirement that they be residents. There's no requirement that they be citizens. They don't have to be 18 years of age. They don't have to be registered. And an irony of all ironies, corporations get to consent or object. They have no right to vote. A governmental entity that owned property within the area to be annexed has the right to consent or object. Does that even matter unless we get to subsection C annexations? In my view, no, Your Honor, and Mr. Moore was going to address that issue. Clearly, the Idaho legislature could have intended the vote here if it chose. It knew how to do it. It had Willows as the backdrop for 50-222. It did not choose to do so. Now, the second question that comes up in these cases, whenever there's an equal protection clause challenge, this court has to apply federal law. And the question is whether the landowner consent requirement burdens the right to vote for purposes of federal equal protection. The answer here is twofold in my view. Despite now our second argument in this case, the appellants have yet to show this court any legal authority for the proposition that a landowner consent provision is the same as voting for purposes of equal protection. And secondly, as has been indicated, we have Hussey. We have the recent Morseman case, the Oregon appellate case that we provided by supplemental citation. Blackwell, that's cited in the Hussey case at 1266, stands for the proposition that landowner consent does not equal voting. And, of course, we have the Willows decision, which was interpreting Idaho law. Was this a B-1 annexation, not a B-3? It was a B-1. It was a B-1? Yes, sir. I have no further comments. Thank you very much for your time. It's a privilege to be here at the beautiful courthouse. May it please the court. Counsel. Your Honor, my name is Mike Moore, and I'm here on behalf of the Chalice City Defendants. Initially, Your Honor, I'd like to address two points that the court asked counsel, and they were not really directly hit on. The first concerned some of the factual background. The sewer system and the water system arose as a result of transactions between the city of Chalice and Cypress Mines. Those were put in place. Plaintiffs then purchased the park. They purchased it subject to those already involved systems. Number two, I am involved in an annexation category A. However, the record is clear that the annexation in question dealt with the process, as Your Honor spoke of, Under that subpart with the word or, annexations of any residential enclave lands of less than 100 parcels, which are surrounded on all sides by land within the city or which are bounded on all sides by lands within the city and lands for which owner approval must be given pursuant to, or lands which are bounded on all sides by lands within the city and bounded by lands of the areas of impact. The last section, Judge, this annexation happened because it was bounded on three sides by the city and the other side was bounded by the area of the city's impact. This does not involve the area of the city's impact. That was where the sewage ran out? I'm sorry, Your Honor? The area of city impact. Yes, Your Honor. That was, what, a sewage lagoon? I'm not sure of the exact condition of the property at that point. All right. I want to know, I'm supposed to use the part of the statute here that says the bottom part, Your Honor, lands within a city and by the boundary of the city's area of city impact, and I'm wondering what the area of city impact means in this case. In this context, in the Idaho statute system, that's a term of art used in dealing with the comprehensive plan, and this is an area designated by the planning and zoning process as an area of city impact. That process occurred through a zoning ordinance that was adopted, as described in our brief, in 2001. Can you tell me what this means concretely? Well, it's an enclave piece of property. It's an area that's identified as an area of city impact and it's bounded on three sides. I just don't know what it means. I mean, New York City has an impact in New Haven, Connecticut. I don't know what the words mean. Well, Your Honor, at this point I can't answer your question. So the area of city impact, then, is not within the city limits at this time? No, it's not, Your Honor. Okay. But it's not bounded by the city? No, it's not. It's bounded, the area of impact is bounded on other sides. There'd be other portions. It's something that we think may be affected by the city. Yes, Your Honor, it would be. How? I can't speak to that, Your Honor, as I speak. The enclave piece of property would also qualify by that. If you're trying to annex this fourth side, you might say, well, the trailer park is an area of city impact. The whole thing just could be circular, for all we know. At this point, Your Honor, I can't answer your question. There could be no problem and no circular reasoning at all if we actually knew what the words meant concretely. Well, at this point, Your Honor, there's nothing in the record. That really has not become an issue at this point in the case. Everybody agrees it's an impacted area. And if you have an impacted area on one-fourth of the surrounding area, all three other sides are surrounded by the city. Yes, Your Honor. And it's an enclave area. It doesn't matter whether anybody consents or votes or anything else. Thank you, Your Honor. The city just annexed. That's exactly the point under the statute. That's what happened. And here, Your Honor, if I could point out and follow up to your question, plaintiffs early on in this case acknowledged and agreed procedurally under the statutory system in place, we complied with all of those issues. That wasn't ever an issue in this case. That was by stipulation presented to the court in their briefing materials. And so the focus has always been on the issues surrounding whether or not this was a right to vote because of the consent procedures. And we also submitted to the court the Green decision, which we believe suggests that even if you were to infer in this case that there was some type of right to vote implicated, in this instance there would be rational basis scrutiny because of the Green decision. Is there any landowner besides the lady that owns the trailer park? No. Is there any to my knowledge? Not to my knowledge. I don't think there's anything in the record. She was an owner, although her manager is the one that actually showed up to the hearing that took place in terms of the annexation process and was looking. Yes. She did, Your Honor. And the — Less than 100, we only have one piece of property. But it doesn't matter whether anybody consents or objects, does it? Well, in this instance it doesn't because under annexation A, if you — under the statute, the legislature has decided that if you are bounded on three sides by the city and you — the other side is an area of impact, pursuant to the state's ordinance, there's no consent process. So the scheme is if it's an enclave, there's no consent procedure of any kind? At all. At all. And my understanding of category B, as Mr. Davis has indicated, there's not a consent procedure involved at all as well. And so as we've mentioned in our brief in the case law there, throughout this case, it's been our position that what plaintiffs are addressing is a totally hypothetical situation. Is there any reason we should talk about C annexation? I don't believe so, Your Honor, because, in fact, my annexation is annexation A, and it's specifically authorized. It doesn't involve a consent procedure. And Mr. Davis's annexation is under category B, Mr. Davis, the city of Rexburgs. He won. But, Your Honor — But he won, aren't you, Davis? Your Honor, the point that I was addressing earlier, if you took a look at the Green v. City of Tucson decision, even if you were going to infer some type of voting process here, because each of the people within the individual categories are treated the same, this Court in Green v. City of Tucson has held that a rational basis analysis would apply. Judge Windmill — Get to any of that if there's no voting procedure? He did not get to the — I didn't ask you whether he did. I asked whether we did. Do we have to get to rational basis if we decide there's no voting procedure? No, Your Honor. I don't believe you do. I don't believe you do. I think that the statute — if this is simply a consent process, and if this doesn't implicate voting rights, then we don't get there. I thought you said if this is a consent process, we don't get there. I'm assuming they're arguing — I thought it was a consent process. If it's not a consent process, it's simply an annexation process, Your Honor. The state legislature has authority and great discretion in creating the procedures that it wants to apply in terms of annexation processes. So we don't have to talk about whether there's a rational basis for the distinctions they draw? Well, Your Honor, I think you do in the big picture. If you look at it under Hunter, the legislature has broad discretion in assessing this, and certainly there must be a rational basis, I guess, in terms of analyzing it in the big picture of looking at statutes such as this. But I believe Judge Windmill has addressed this and found that it was a rationally based scheme. And I think he set forth and has articulated very well the rational basis for this process. And indeed, in the legislative intent process in Section 1, the legislature has clearly identified the rational basis for this type of annexation process. I don't have any further comments other than we would ask the Court to affirm Judge Windmill's decision and dismiss the complaint. Thank you. Okay, Your Honor. Just quickly, you've already identified that part of subsection dealing with Category B annexations. Address quickly the rational basis thing. I agree with the defendants that if this is not equal protection, is it at least due process? And some analysis of rational basis is required, and we argue extensively in our brief as to why this is not a rational scheme. Secondly, as to the standing of Carr as to Category C annexations, this is a declaratory judgment action, which by its nature is intended to allow people to challenge something which may be an imminent impact on them before it actually occurs in the context of a written document about which there is in fact an actual dispute. Again, the cities keep coming back and saying it's not a vote because we didn't call it a vote. We're only allowing landowners to do it. Maybe we're allowing corporations to do it, all of which would violate Idaho constitutional standards, and say we can avoid the constitutional and legal requirements of a vote by simply involving people who are not allowed to vote, violating a constitution in order to say we're not violating a constitution. It is circular reasoning. Thirdly, part of our challenge here is the discrimination, the disparate treatment of people, some people who are allowed to vote while other people are not allowed to vote. And one of the points I was coming to in the beginning is that this is a circumstance in which the question really is not one of what are the boundaries of what your street address is. This is a situation in which people are literally lifted from representation by one representative body for whom they have voted in which they have chosen to live, to be subject to their rules and to these regulators and legislators, and taken into another jurisdiction with a different set of regulators and legislators for whom they have not voted. And we believe that this brings things into play like Reynolds versus Sims in which they did not get into whether there are suspect classifications. Once you discriminate against categories of voters that affect your representation and the laws under which you must live, the courts have said repeatedly that this must be examined carefully and scrupulously because of the impact that this may have on people and their right to choose the people who represent them. And finally, the issue of enclaves. A city area of impact, and I can define this for you, is simply the statute's way of saying that this is land which is subject to annexation. Essentially, the process in Idaho is City A and City B, which are relative neighbors, make a decision between them as to which parcels of land will be subject to annexation by City A and which ones will be annexed by City B. Saying that you are bounded on three sides by the city and by the area of impact on the fourth side is extraordinarily irrational because what it presumes is that your limits of your city are always going to be even straight lines. By this definition, if you have a jog in the line here, and then it comes back up to this baseline, this person is somehow or other now enclaved by the city even though that parcel is contiguous with thousands of acres or even millions of acres of land which are not a part of the city and may never be a part of the city. So it seems to us to be a transparent ploy to avoid this. Part of our objection as an entity is we have members as an entity in CAR who are going to be subject to these regulations, who have already been threatened by these regulations, are only the next ones on the list to do it. And when you say, well, in Category B you have more than 100 lots, less than 100 lots, Category C you have more than 100 lots. By the way, the statute is silent as to what happens when you have exactly 100 lots out there. It makes no sense because it is not necessarily any more complicated to annex 100 lots or 1,000 lots than it is to annex 50 lots or 100 lots. And what you have is a scheme that allows one person, in a situation in which you may have 1,000 acres of land, in which this person owns one and a half acre more than 500 other people combined, put together, because they own more land, under the one person, one vote rule, which is being violated here, they can outweigh the votes of all of these other people. That violates Gray. It violates Reynolds v. Sims. That's on a C. That is on a C. But also when you are discriminating between Categories A and B because their ownership of land or the fact that the city has chosen only to annex a certain number of land deprives them of what every other voter in Category C annexations are entitled to get as a matter of law. Thank you, Counsel. Thank you, Your Honor.
judges: Thompson, Kleinfeld, Bybee